GIBSON, DUNN & CRUTCHER LLP
MICHELE L. MARYOTT (SBN 191993)
MMaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

LYNN HANG (SBN 245576)
LHang@gibsondunn.com
333 S. Grand Avenue
Los Angeles, CA 90071-1512
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendant
SUR LA TABLE, INC.

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON PALM, on behalf of himself and all others similarly situated, | CASE NO. _____ CV 12 1250 JCS |
| Plaintiffs, | **DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |
| vs. | |
| SUR LA TABLE, INC., a Corporation, and DOES 1-25, | [San Francisco Superior Court, No. CGC-12-518159] |
| Defendants. | |

Gibson, Dunn & Crutcher LLP

DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL

# TABLE OF CONTENTS

**Page**

TIMELINESS OF REMOVAL ........................................................................................1

SUMMARY OF PLAINTIFF'S ALLEGATIONS AND FACTS GIVING RISE
    TO JURISDICTION AND REMOVAL ...................................................................1

A.     Based on Plaintiff's Allegations, There Are More Than 100
        Members in The Proposed Class..................................................................3

B.     Sur La Table and Plaintiff Are Citizens of Different States....................3

C.     The Amount Placed In Controversy By Plaintiff's Class Claims
        Exceeds $5 Million ........................................................................................4

    1.     Plaintiff's Claim for Waiting Time Penalties Puts
        $3,111,663.60 in Controversy ......................................................5

    2.     Plaintiff's Allegations Regarding Missed Rest Periods Puts
        Another $2,110,982.30 in Controversy, Thus Confirming
        that the $5 Million Threshold is Met............................................7

    3.     Plaintiff's Claim for Sur La Table's Alleged Failure to
        Provide Accurate Wage Statements Adds Another
        $1,523,080 to the Amount in Controversy, Further
        Confirming that the $5 Million Threshold is Met........................8

D.     The Amount In Controversy for Plaintiff's Individual Claims
        Exceeds $75,000 ...........................................................................................10

    1.     Plaintiff's Allegations Regarding Lost Wages and Benefits
        Place in Controversy at Least $36,379.00 ...................................10

    2.     Plaintiff's Allegations Regarding Emotional Distress and
        Physical Injury Puts in Controversy At Least Another
        $20,000-36,000 .............................................................................11

    3.     Plaintiff's Claim for Punitive Damages, Which Adds At
        Least Another $72,000, Confirms That The Amount in
        Controversy Requirement is Met...................................................12

THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER......................15

Gibson, Dunn &
Crutcher LLP

DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amigon v. Cobe Color Cosmetics,*
2009 WL 7497138 (Cal. Super. Ct. 2009) .................................................................. 13

*Bandoy v. Huh,*
1996 WL 675978 (Cal. Super. Ct. 1996) ................................................................... 14

*Campos v. Valley Family Health Center Medical Group, Inc.,*
2007 WL 3275361 (Cal. Super. Ct. 2007) ........................................................ 11, 13, 14

*Carter v. Housing Authority of the City of Madera,*
2011 WL 3606914 (Cal. Super. Ct. 2011) ................................................................. 11

*Davenport v. Mutual Ben. Health Acc. Ass'n.,*
325 F.2d 785 (9th Cir. 1963) .................................................................................... 12

*Drumm v. Morningstar,*
695 F. Supp. 2d 1014 (N.D. Cal. 2010) ...................................................................... 6

*Galt G/S v. JSS Scandinavia,*
142 F.3d 1150 (9th Cir. 1998) .................................................................................. 13

*Garcia v. Macy's Dept. Stores Inc.,*
2008 WL 4722159 (Cal. Super. Ct. 2008) ................................................................. 11

*Gibson v. Chrysler Corp.,*
261 F.3d 927 (9th Cir. 2001) .................................................................................... 12

*Guglielmino v. McKee Foods Corp.,*
506 F.3d 696 (9th Cir. 2007) ..................................................................................... 5

*Hertz Corp. v. Friend,*
130 S. Ct. 1181 (2010) .............................................................................................. 4

*Korn v. Polo Ralph Lauren Corp.,*
536 F. Supp. 2d 1199 (E.D. Cal. 2008) ....................................................................... 5

*Lewis v. Verizon Communications, Inc.,*
627 F.3d 395 (9th Cir. 2010) ..................................................................................... 3

*Lowdermilk v. US Bank Nat'l Ass'n,*
479 F.3d 994 (9th Cir. 2007) .................................................................................... 10

*Mamika v. Barca,*
68 Cal. App. 4th 487 (1998) ...................................................................................... 6

*Martin v. The Old Turner Inn,*
2003 WL 22998402 (Cal. Super. Ct. 2003) ............................................................... 14

*Romo v. FFG Ins. Co.,*
397 F. Supp. 2d 1237 (C.D. Cal. 2005) ..................................................................... 12

*Rosales v. Career Systems Dev. Corp.,*
2010 WL 3918596 (E.D. Cal. 2010) ......................................................................... 11

*Schomer v. G.A.P. Enters.,*
2008 WL 3539289 (Cal. Super. Ct. 2008) ................................................................. 13

*Simmons v. PCR Technology,*
209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................................ 11, 12, 13

Gibson, Dunn &
Crutcher LLP

## Statutes

28 U.S.C. § 1332 ...................................................................................................1, 3, 10, 15
28 U.S.C. § 1332(c) ..............................................................................................................3
28 U.S.C. § 1441 .............................................................................................................1, 15
28 U.S.C. § 1441(b) ..............................................................................................................4
28 U.S.C. § 1446 .............................................................................................................1, 15
28 U.S.C. § 1446(a) ..............................................................................................................1
28 U.S.C. § 1446(b) ..............................................................................................................1
28 U.S.C. § 1446(d) ............................................................................................................15
28 U.S.C. § 1453 ...................................................................................................................1
28 U.S.C. § 1711-1715 ........................................................................................................1
28 U.S.C. § 84(c) ...............................................................................................................15
Bus. & Prof. Code § 17208 ...............................................................................................9
Cal. Civ. Proc. Code § 338 ................................................................................................6
Cal. Civ. Proc. Code § 340(a) ...........................................................................................9
Cal. Lab. Code § 203 ........................................................................................................14
Cal. Lab. Code § 226(e) .................................................................................................9, 14
Cal. Lab. Code § 226.7(b) ..................................................................................................7

## Regulations

8 Cal. Code Regs., § 13520 ................................................................................................5

DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**
2  **NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AARON**
3  **PALM AND HIS COUNSEL OF RECORD:**

4        **PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§ 1332, 1441, 1446,
5  1453, 1711-1715 and the Class Action Fairness Act of 2005 ("CAFA"), Defendant Sur
6  La Table, Inc. (hereinafter "Sur La Table") hereby removes to the United States
7  District Court for the Northern District of California the above-captioned state court
8  action, originally filed as Case No. CGC-12-518159 in San Francisco County Superior
9  Court, State of California. Removal is proper on the following grounds:

10                          **TIMELINESS OF REMOVAL**

11      1.     Plaintiff Aaron Palm (hereinafter "Plaintiff") filed an individual and class
12  action Complaint against Sur La Table on February 10, 2012, in San Francisco County
13  Superior Court, State of California, Case No. CGC-12-518159, captioned *Aaron Palm,*
14  *on behalf of himself and all others similarly situated v. Sur La Table, Inc.* Pursuant to
15  28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint are
16  attached as Exhibits A and B to the Declaration of Michele L. Maryott ("Maryott
17  Decl.") filed concurrently herewith. Plaintiff served Sur La Table, through its agent
18  for service of process, Business Filings Incorporated, with the Summons and
19  Complaint on February 13, 2012. *See* Maryott Decl., Exh. C. This notice of removal
20  is therefore timely pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days
21  after service was completed.

22      2.     On March 13, 2012, Sur La Table filed its Answer to the Complaint.
23  Maryott Decl., Exh. D. There have been no other proceedings in this action.

24           **SUMMARY OF PLAINTIFF'S ALLEGATIONS AND FACTS**
25           **GIVING RISE TO JURISDICTION AND REMOVAL**

26      3.     Plaintiff's Complaint alleges that Sur La Table violated state wage and
27  hour laws by, *inter alia*, failing to provide rest breaks, failing to provide accurate
28  wage statements, and failing to pay unpaid wages immediately upon discharge. *See*

1  Maryott Decl., Exh. B (Complaint, ¶¶ 32-38). Plaintiff seeks to represent a class of

2  Sur La Table employees described as follows:

3      Non-exempt hourly employees at any of Defendant's stores in California

4      who worked either (a) less than four but more than three-and-a-half

5      hours, or (b) four hours plus a major fraction of four hours, in a day

6      during the course of their employment at any time during the four years

7      prior to the filing of this law suit and until final judgment is entered.

8  *Id.*, ¶ 21.

9      4.      Specifically, Plaintiff alleges that he and the putative class members were

10 owed "premium wages" on the missed rest breaks (*id.*, ¶ 32), "penalties and attorney's

11 fees under Lab[or] Code § 226(e)" for failure to provide accurate wage statements (*id.*,

12 ¶ 36), "penalties under Lab[or] Code § 203" for failure to pay unpaid wages

13 immediately upon discharge (*id.*, ¶ 38), and "all applicable penalties" arising from the

14 alleged unlawful conduct. *Id.*, "Prayer for Relief" ¶ 5.

15     5.      In addition, Plaintiff asserts a claim styled as "whistleblower retaliation in

16 violation of public policy" in connection with the termination of his employment with

17 Sur La Table. *Id.*, ¶ 29. In connection with this individual claim, Plaintiff claims that

18 he suffered "lost wages, severe emotional distress, physical pain and suffering, and

19 injuries." *Id.*, ¶ 30. Plaintiff also claims he should be entitled to "an award of

20 exemplary or punitive damages." *Id.*, ¶ 31.

21     6.      Sur La Table denies any liability in this case and intends to vigorously

22 oppose Plaintiff's individual claim as well as class certification of the putative class

23 claims. Sur La Table believes that class treatment is completely inappropriate under

24 the circumstances here and that there are many differences between the named

25 Plaintiff and the various employees Plaintiff seeks to represent in his Complaint. Sur

26 La Table expressly reserves all rights in this regard. Significantly, the Ninth Circuit

27 has explicitly held that a defendant need not concede liability on any of a plaintiff's

28 claims in order to establish the amount in controversy, but need only present evidence

1  showing how much is "in play." *Lewis v. Verizon Communications, Inc.*, 627 F.3d

2  395, 401 (9th Cir. 2010). Accordingly, for purposes of the jurisdictional requirements

3  *for removal only*, Sur La Table has a good faith basis to believe that the **allegations** in

4  Plaintiff's Complaint put in controversy, in the aggregate, an amount that exceeds $5

5  million for the purported class claims and $75,000 for Plaintiff's individual claims.

6  *See* 28 U.S.C. § 1332.

7  **A.    Based on Plaintiff's Allegations, There Are More Than 100 Members in**

8  **The Proposed Class**

9      7.    According to Plaintiff, the class consists of "non-exempt employees in

10  Defendant's stores in California" who worked either "less than four but more than

11  three-and-half hours" or "four hours plus a major fraction of four hours" in a day

12  during the course of their employment "at any time during the four years prior to the

13  filing of this law suit and until final judgment is entered." Maryott Decl., Exh. B

14  (Complaint, ¶ 21).

15      8.    Based on a good faith review of information currently available, Sur La

16  Table estimates that there were approximately 2,963 non-exempt employees (133 full-

17  time and 2,830 part-time) in California from February 2008 to February 2012. *See*

18  Declaration of Mary S. Jensen ("Jensen Decl."), ¶ 6.

19  **B.    Sur La Table and Plaintiff Are Citizens of Different States**

20      9.    Plaintiff alleges that he is a resident of and/or is domiciled in the State of

21  California. *See* Maryott Decl., Exh. B (Complaint at ¶ 3 ["Plaintiff Aaron Palm is an

22  individual who was, at all relevant times herein, a resident of the State of

23  California."]). As such, Plaintiff is a citizen of California.

24      10.    At the time this action was commenced, and at all times since, including

25  at the time this Notice of Removal is filed, Sur La Table was and is a corporation

26  organized under the laws of the State of Washington with its principal place of

27  business in Seattle, Washington. Jensen Decl., ¶ 3. Pursuant to 28 U.S.C. § 1332(c), a

28  corporation shall be deemed to be a citizen of any State by which it has been

Gibson, Dunn &
Crutcher LLP

1  incorporated and of the State where it has its principal place of business. The

2  Supreme Court recently interpreted the phrase "principal place of business" to mean

3  "the place where a corporation's officers direct, control, and coordinate the

4  corporation's activities," *i.e.*, its "nerve center," which "should normally be the place

5  where the corporation maintains its headquarters, provided that the headquarters is the

6  actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 130 S.

7  Ct. 1181, 1192 (2010). Sur La Table's headquarters located in Seattle, Washington

8  constitute its "nerve center" under the test adopted in *Hertz* because:

9   (a)  Sur La Table's corporate decisions, including its operational, executive,

10        administrative and policymaking decisions, are made in Seattle,

11        Washington. Jensen Decl., ¶ 4.

12   (b)  The majority of Sur La Table's executive officers principally conduct their

13        business in Washington. *Id*

14   (c)  The administrative functions crucial to Sur La Table's day-to-day

15        operations are conducted in Seattle, Washington. The respective officers

16        for these departments work in Seattle, Washington, and are responsible for

17        developing policies and protocols for Sur La Table's nationwide

18        operations. *Id*.

19  Accordingly, Sur La Table is and has been at all relevant times a citizen of the State of

20  Washington.

21      11.    Plaintiff also named as defendants Does 1 through 25. For purposes of

22  removal jurisdiction, the "citizenship of defendants sued under fictitious names shall

23  be disregarded." 28 U.S.C. § 1441(b).

24  **C.    The Amount Placed In Controversy By Plaintiff's Class Claims Exceeds $5**

25  **Million**

26      12.    Where, as here, a plaintiff's state court complaint does not specify a

27  particular amount of damages, defendants are only required to prove by a

28  preponderance of the evidence that the amount in controversy exceeds $5 million.

1   *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Korn v. Polo*

2   *Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008). The burden on

3   defendants is "not daunting, as courts recognize that under this standard, a removing

4   defendant is *not* obligated to research, state, and prove the plaintiff's claims for

5   damages." *Korn*, 536 F. Supp. 2d at 1204-05 (internal quotation omitted) (emphasis

6   in original).

7      **1.    Plaintiff's Claim for Waiting Time Penalties Puts $3,121,434.00 in**

8              **Controversy**

9      13.    In connection with Plaintiff's claim that he and the putative class

10   members did not receive all wages for which they were entitled during their

11   employment as a result of Sur La Table's alleged failure to compensate employees for

12   missed rest breaks, Plaintiff alleges that every putative class member who ended

13   his/her employment with Sur La Table during the class period is entitled to recovery

14   of waiting time penalties pursuant to California Labor Code section 203. Maryott

15   Decl., Exh. B (Complaint, ¶ 38).

16      14.    If an employer fails to pay all wages due an employee at the time of

17   termination, as required by Labor Code section 201, or within 72 hours after

18   resignation, as required by Labor Code section 202, then the wages "shall continue as

19   a penalty from the due date thereof at the same rate until paid or until an action

20   therefore is commenced," for up to a maximum of 30 days. Cal. Lab. Code § 203. An

21   employer may not be liable for penalties if a good faith dispute exists as to whether the

22   wages are owed. Further, to be liable for waiting time penalties, an employer's failure

23   to pay wages within the statutory time frame must be *willful*: "A willful failure to pay

24   wages within the meaning of Labor Code Section 203 occurs when an employer

25   *intentionally* fails to pay wages to an employee when those wages are due." 8 Cal.

26   Code Regs., § 13520 (emphasis added). Sur La Table denies that any such penalties

27   are owed to Plaintiff or putative class members. However, for purposes of this

28

1  jurisdictional analysis *only*, Sur La Table relies solely on Plaintiff's allegations that
2  the penalties are owed.

3      15.    Sur La Table estimates that approximately 1,962 (78 full-time and 1,884
4  part-time) employees in California resigned or were terminated during the period
5  between February 10, 2009 to February 10, 2012.[1] Jensen Decl., ¶ 8. The average
6  rate of pay for full-time employees during this time period was $18.65/hour, and the
7  average ray of pay for part-time employees during this time period was $9.81/hour.
8  *Id.*

9      16.    If, as Plaintiff alleges, individuals who left the employment of Sur La
10  Table during the three years preceding the filing of the Complaint were owed wages
11  and did not receive them, the amount in controversy with respect to the waiting time
12  penalties claim would be approximately **$3,121,434.00**, calculated as follows:

13  ### *Full-Time Employees:*

14  Daily rate for full-time employees ($18.65 rate of pay x 8       $149.20 daily
15  hours a day)                                                     rate[2]

16
17  $149.20 x 30 days maximum penalty:                               $4,476.00 per
                                                                     employee
18  Amount in controversy based on Plaintiffs' allegations
19  equals $4,476.00 x 78 employees:                                 **$349,128.00**

20
21

22  [1] The statute of limitations for claims under Labor Code section 203 is three years. Cal. Lab. Code § 203, Cal. Civ. Proc. Code § 338.

23  [2] Under one interpretation of California Labor Code section 203, calculation of
24  waiting time penalties for wages owed requires the calculation of an employee's
*daily* rate of pay, which is then multiplied by a maximum of 30 days, depending on
25  the length of delay in receipt of wages, in order to determine the amount of penalty
owed. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (the waiting time
26  penalty is "equivalent to the employee's daily wages for each day he or she
remained unpaid up to a total of 30 days"; the "critical computation" is "the
27  calculation of a daily wage rate, which can then be multiplied by the number of
days of nonpayment, up to 30 days."); *Drumm v. Morningstar*, 695 F. Supp. 2d
28  1014 (N.D. Cal. 2010) (same).

*Part-Time Employees:*

| | |
|---|---|
| Daily rate for part-time employees ($9.81 rate of pay x 5 hours a day[3]) | $49.05 daily rate |
| $49.05 x 30 days maximum penalty: | $1,471.50 per employee |
| Amount in controversy based on Plaintiffs' allegations equals $1,471.50 x 1,884 employees: | **$2,772,306.00** |

17.    The amount in controversy alleged by Plaintiff relating to waiting time penalties is thus **$3,121,434.00**.

### 2.    Plaintiff's Allegations Regarding Missed Rest Periods Puts Another $2,110,982.30 in Controversy, Thus Confirming that the $5 Million Threshold is Met

18.    Plaintiff alleges that Sur La Table intentionally and improperly denied rest periods to him and the putative class members in violation of Labor Code section 226.7. Maryott Decl., Exh. B (Complaint, ¶¶ 32-34). Plaintiff failed to specify in his Complaint how many rest breaks were actually missed for which he and the class members were not properly compensated. However, Plaintiff alleges that "[b]y company practice and written policy, Defendants systematically denied Plaintiff, and all other similarly situated non-exempt hourly employees, the rest breaks required under California law." *Id.*, ¶ 2. The remedy available to an employee who is not authorized or permitted to take a rest break to which he or she is entitled on any given day is an additional hour of pay for that day. Cal. Lab. Code § 226.7(b).

19.    Sur La Table estimates that there are approximately 2,963 non-exempt employees (133 full-time and 2,830 part-time) in California from February 2008 to February 2012. Jensen Decl., ¶ 6. The average rate of pay for full-time employees

---

[3] The average shift length during the relevant time period was approximately 5 hours per day. Jensen Decl., ¶ 6.

Gibson, Dunn & Crutcher LLP

1    during this time period was $18.43/hour, and the average ray of pay for part-time

2    employees during this time period was $9.79/hour. *Id.* During this time period, non-

3    exempt employees in California worked an average of 35 weeks with the company.

4    *Id.*

5         20.    If each of the 2,963 non-exempt employees missed two rest breaks per

6    week[4] for which he/she was not compensated the additional hour of pay (at an average

7    of 35 weeks worked per employee), the amount in controversy on this claim would be

8    **$2,110,982.30**, calculated as follows:

9
       Missed rest breaks for full-time employees                     $171,583.30
10     (133 employees x 2 missed breaks per week x 35 weeks x
       $18.43 average rate of pay):
11

12     Missed rest breaks for part-time employees
13     (2,830 employees x 2 missed breaks per week x 35 weeks
       x $9.79 average rate of pay):                                  $1,939,399.00
14

15     Amount in controversy based on Plaintiff's allegations:        **$2,110,982.30**

16        21.    The amount in controversy alleged by Plaintiff relating to rest break

17    violations is thus **$2,110,982.30**.

18        **3.    Plaintiff's Claim for Sur La Table's Alleged Failure to Provide**

19             **Accurate Wage Statements Adds Another $1,523,080 to the Amount**

20             **in Controversy, Further Confirming that the $5 Million Threshold is**

21             **Met**

22        22.    Plaintiff also alleges class claims to recover penalties for failure to

23    provide accurate itemized wage statements. Maryott Decl., Exh. B (Complaint, ¶¶ 35-

24    35). For failure to provide accurate itemized wage statements, Labor Code section

25

26    [4] Because the pool of putative class members includes both full-time and part-time
      employees, Sur La Table does not estimate that five rest break violations occurred
27    each week (*i.e.,* one missed rest break each day). Rather, Sur La Table assumes for
      purposes of this calculation a conservative estimate of two missed rest breaks per
28    employee per week.

226(e) provides for the imposition of penalties for each employee in the amount of $50 for the first pay period and $100 for each subsequent pay period, not to exceed $4000 per employee. Cal. Lab. Code § 226(e).

23.     During the one-year period prior to the filing of the Complaint,[5] Sur La Table employed approximately 1,313 non-exempt employees in California. Jensen Decl., ¶ 7. These employees worked an average of 12.10 pay periods each from February 2011 to February 2012, for an aggregate total of 15,887.30 pay periods. *Id.*

24.     Assuming for purposes of removal that there was at least one rest period violation that resulted in an inaccurate wage statement per pay period, the amount in controversy with respect to the wage statement claim would be approximately **$1,523,080**, calculated as follows:

Penalty for initial violation for each employee                                        $65,650.00
(1,313 employees or pay periods x $50):

Penalty for each subsequent violation for each employee
(14,574.30 subsequent pay periods [15,887.30 total pay            $1,457,430.00
periods-1,313 initial pay periods]) x $100:

Amount in controversy based on Plaintiff's allegations:            **$1,523,080.00**

25.     The amount in controversy alleged by Plaintiff relating to inaccurate wage statements is thus **$1,523,080.**

26.     In performing these calculations, Sur La Table did not consider Plaintiff's assertion that he would be entitled to damages for alleged unlawful business practices under California Business & Professions Code section 17200 *et seq.* Maryott Decl., Exh. B (Complaint, ¶¶ 39-40). The statute of limitations for claims under the Business & Professions Code section 17200 *et seq.* is four years. Bus. & Prof. Code § 17208.

---

[5] The statute of limitations for an action upon a statute for a penalty is one year. Cal. Civ. Proc. Code § 340(a).

1  Therefore, if Plaintiff's claims under this section are included, then the calculations

2  noted above would increase due to an extended limitations period.

3        27.    Sur La Table also did not consider Plaintiff's claim that he is entitled to

4  attorneys' fees with respect to the majority of his claims in these calculations. The

5  attorneys' fees Plaintiff seeks may, however, be properly included when determining

6  the amount in controversy under CAFA. *Lowdermilk v. US Bank Nat'l Ass'n*, 479

7  F.3d 994, 1000 (9th Cir. 2007) (holding that where an underlying statute authorizes an

8  award of attorneys' fees, such fees may be included in the amount in controversy).

9        28.    Based on the foregoing, the jurisdictional amount in controversy

10  requirement is met and removal to this Court is proper under CAFA. *See Lewis*, 627

11  F.3d at 401 (*citing Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("once

12  the proponent of federal jurisdiction has explained *plausibly* how the stakes exceed $5

13  million . . . *then the case belongs in federal court unless it is legally impossible for the*

14  *plaintiff to recover that much*") (emphasis added).

15  **D.**    **The Amount In Controversy for Plaintiff's Individual Claims Exceeds**

16      **$75,000**

17        29.    This Court also has original jurisdiction over Plaintiff's individual claim

18  based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332, because this is a

19  civil action between citizens of different states (as established above) and the amount

20  in controversy exceeds $75,000, exclusive of interest and costs.

21      **1.**    **Plaintiff's Allegations Regarding Lost Wages and Benefits Place in**

22          **Controversy at Least $36,379.00**

23        30.    Plaintiff's claim for lost wages and benefits must be based on his annual

24  compensation during the time of his employment with Sur La Table. At the time of

25  Plaintiff's termination, Plaintiff was compensated at $21.50/hour and was working an

26  average of 32.54 hours a week. Jensen Decl., ¶ 9. Accordingly, Sur La Table

27  estimates that Plaintiff was eligible to receive a total annual compensation of

28  approximately $36,379. *Id*. Given that the first Case Management Conference is not

1  scheduled to proceed until July 13, 2012 (*see* Maryott Decl., Exh. E), Sur La Table

2  estimates that, even if trial proceeds quickly, this matter will not be resolved until at

3  least one year after Plaintiff's termination from employment, which was on or about

4  October 19, 2011. *Id.*, Exh. B (Complaint, ¶ 16). Therefore, the amount in

5  controversy based on Plaintiff's compensatory damages claim includes at least

6  $36,379.00

7  **2. Plaintiff's Allegations Regarding Emotional Distress and Physical**

8  **Injury Puts in Controversy At Least Another $20,000-36,000**

9  31. Plaintiff seeks damages to compensate him for alleged "emotional

10 distress and injuries." Maryott Decl., Exh. B (Complaint, "Prayer for Relief" ¶ 2).

11 Emotional distress damages are properly considered in determining whether the

12 amount in controversy meets the jurisdictional threshold. *See Simmons v. PCR*

13 *Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). Emotional distress awards

14 in successful wrongful termination cases have been substantial—in some instances,

15 even more than doubling the amount awarded in lost wages. *See, e.g., Garcia v.*

16 *Macy's Dept. Stores Inc.*, 2008 WL 4722159 (Cal. Super. Ct. 2008) (plaintiff awarded

17 $35,000 for emotional distress in wrongful termination case when only $3,671 in lost

18 wages were awarded); *Carter v. Housing Authority of the City of Madera*, 2011 WL

19 3606914 (Cal. Super. Ct. 2011) (plaintiff awarded $218,000 for emotional distress in

20 retaliation case when only $109,000 was awarded in past lost earnings); *Campos v.*

21 *Valley Family Health Center Medical Group, Inc.*, 2007 WL 3275361 (Cal. Super. Ct.

22 2007) (plaintiff awarded $36,700 for emotional distress in retaliation case when only

23 $7,340 was awarded in economic damages); *Rosales v. Career Systems Dev. Corp.*,

24 2010 WL 3918596 (E.D. Cal. 2010) (plaintiff awarded $84,000 for emotional distress

25 in wrongful termination case where $154,000 was awarded for past lost earnings).

26 32. Sur La Table denies that any such damages are owed to Plaintiff for his

27 emotional distress claim, and Sur La Table does not suggest that Plaintiff would ever

28 recover on such a claim. However, for purposes of this jurisdictional analysis *only*,

1    Sur La Table relies on the cases cited above, and finds that even with the most

2    conservative estimates, Plaintiff has placed into controversy anywhere from $20,000

3    to $36,000 (*i.e.,* a range between half of one year of lost wages and the full amount of

4    one year of lost wages).

5        33.    Sur La Table's estimate of $20,000-36,000 is particularly conservative

6    given the fact that Plaintiff has alleged "*severe* emotional distress" in addition to

7    "physical pain and suffering, and injuries." Maryott Decl., Exh. B (Complaint, ¶ 30)

8    (emphasis added). Plaintiff's allegations of physical pain and suffering, which are not

9    incorporated into the estimates above, also increase the amount in controversy.

10       **3.    Plaintiff's Claim for Punitive Damages, Which Adds At Least**

11           **Another $72,000, Confirms That The Amount in Controversy**

12           **Requirement is Met**

13       34.    Plaintiff seeks "exemplary or punitive damages pursuant to Civ. Code §

14   3294." Maryott Decl., Exh. B (Complaint, "Prayer for Relief" ¶ 3). Plaintiff may seek

15   punitive damages in connection with a claim for wrongful termination in violation of

16   public policy, and thus his claim for punitive damages is properly considered when

17   determining the amount in controversy. *See Davenport v. Mutual Ben. Health Acc.*

18   *Ass'n.*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages are included in

19   calculating the amount in controversy); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945

20   (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in

21   controversy in a civil action."); *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1240

22   (C.D. Cal. 2005) (where authorized, punitive damages are considered as part of the

23   amount in controversy in meeting the prerequisite for diversity jurisdiction). "To

24   establish probable punitive damages, defendant may introduce evidence of jury

25   verdicts in cases involving analogous facts." *Simmons*, 209 F. Supp. 2d at 1033.

26       35.    Other cases involving single-plaintiff wrongful termination claims have

27   covered a wide range in terms of awards on punitive damages, many of which have

28   doubled or more than doubled the amount awarded in economic damages. *See, e.g.,*

Gibson, Dunn &
Crutcher LLP

DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL

*Amigon v. Cobe Color Cosmetics*, 2009 WL 7497138 (Cal. Super. Ct. 2009) (jury awarded plaintiff $52,000 in punitive damages in wrongful termination case when only $26,000 was awarded in economic and non-economic damages); *Campos*, 2007 WL 3275361 (plaintiff awarded $20,000 in punitive damages in retaliation case when only $7,340 was awarded in economic damages); *Schomer v. G.A.P. Enters.*, 2008 WL 3539289 (Cal. Super. Ct. 2008) (total of $50,000 awarded in punitive damages when compensatory damages were less than $20,000). *See also Simmons*, 209 F. Supp. 2d at 1033 ("The fact that the cited cases involve distinguishable facts is not dispositive. Notwithstanding these differences, the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards . . . .")

36. Sur La Table denies that any punitive damages are owed to Plaintiff, and Sur La Table does not suggest that Plaintiff would ever recover on such a claim. However, for purposes of this jurisdictional analysis *only*, Sur La Table relies on the cases cited above, and finds that even with the most conservative estimates, Plaintiff has placed an additional $72,000 in controversy (*i.e.*, double the amount of lost wages).

37. In addition to the claims above, Plaintiff also seeks "attorney's fees and costs pursuant to Code Civ. Proc. § 1021.5 and Lab. Code § 226(e)." Maryott Decl., Exh. B (Complaint, "Prayer for Relief" ¶ 8). Plaintiff's claim for attorneys' fees is properly considered when determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Specifically, "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Simmons*, 209 F. Supp. 2d at 1035 (holding that attorneys' fees reasonably anticipated over the life of the litigation are included in the amount in controversy analysis.) Attorneys' fees in cases relating to individual wrongful termination claims, which are taken through trial, routinely

1  exceed $50,000 or more. *See Martin v. The Old Turner Inn*, 2003 WL 22998402

2  (Cal. Super. Ct. 2003) (awarding $147,610 in attorneys' fees and costs in a single-

3  plaintiff wage and hour case in which plaintiff only recovered $49,508 in

4  compensatory and punitive damages); *Bandoy v. Huh*, 1996 WL 675978 (Cal. Super.

5  Ct. 1996) (awarding $73,680 in attorneys' fees in a wage-and-hour case); *Campos*,

6  2007 WL 3275361 (plaintiff awarded $117,165 in costs and attorneys' fees in

7  retaliation case when only $7,340 was awarded in economic damages). But even

8  without including Plaintiff's attorney's fees in the calculations, the amount in

9  controversy threshold is satisfied by the other components.

10     38.     Plaintiff also alleged missed rest breaks, failure to provide accurate wage

11  statements, and waiting time penalties (and all other applicable penalties). These

12  individual claims increase the amount in controversy by approximately $5,811.[6]

---

15  [6] Amount calculated as follows:

16  *Missed rest breaks*. Plaintiff claims that he used to be provided with two rest
   breaks a day, but was only provided one rest break a day when the new manager
17  arrived "some time in 2011." Maryott Decl., Exh. B (Complaint, ¶ 20). The new
   manager started on September 1, 2011. Jensen Decl., ¶ 9. Assuming Plaintiff
18  missed two rest periods per week on separate work days beginning on September 1,
   2011, he is alleging $301.00 in damages for this claim: $21.50 (Plaintiff's hourly
19  rate) x 14 work days with new manager (assuming 2 work days per week) =
   $301.00.
20

21  *Failure to provide accurate wage statements*. Plaintiff claims that Sur La Table
   failed to provide him with accurate itemized wage statements showing all premium
22  wages owed to him for Sur La Table's failure to provide the legally required rest
   breaks. If this is true, then it would have impacted his wage statements for four
23  pay periods from September 1, 2011 to the date of his termination. The law
   provides for a $50 penalty for the first pay period, and $100 for each subsequent
24  pay period. Cal. Lab. Code § 226(e). Plaintiff is thus alleging $350.00 in damages
   for this claim: $50 penalty for first pay period + $300 penalty for subsequent three
25  pay periods = $350.00.

26  *Waiting time penalties*. Plaintiff claims that when he was terminated, he was not
   properly paid for the rest breaks which were not provided to him. The law
27  provides for up to 30 days of wages. Cal. Lab. Code § 203. Based on these facts,
   Plaintiff is alleging $5,160.00 in damages for this claim: $21.50 rate of pay x 8
28  hours a day x 30 days = $5,160.00.

Gibson, Dunn &
Crutcher LLP
                                         14
                    DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL

1    39.    Based on the foregoing, the jurisdictional amount in controversy

2  requirement is met and removal to this Court is proper under 28 U.S.C. §§ 1332, 1441,

3  and 1446.

4                **THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER**

5    40.    The United States District Court for Northern District of California, San

6  Francisco Division is the federal judicial district in which the San Francisco County

7  Superior Court sits. This action was originally filed in San Francisco County Superior

8  Court, rendering venue in this federal judicial district and division proper. 28 U.S.C.

9  § 84(c); *see also* 28 U.S.C. § 1441(a).

10    41.    True and correct copies of the Summons, Complaint, and Answer are

11  attached as Exhibits A, B and D to the Maryott Declaration filed concurrently

12  herewith. This constitutes the complete record of all records and proceedings in the

13  state court.

14    42.    Upon filing the Notice of Removal, Sur La Table will furnish written

15  notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the

16  Clerk of the San Francisco County Superior Court, pursuant to 28 U.S.C. § 1446(d).

17    WHEREFORE, Sur La Table hereby removes this action from the Superior

18  Court of California in and for the County of San Francisco.

19

20  DATED: March 13, 2012

21                                    GIBSON, DUNN & CRUTCHER LLP
                                      MICHELE L. MARYOTT
                                      LYNN HANG

22

23
                                      By: Michele Maryott
24                                         Michele L. Maryott

25                                    Attorneys for Defendant
                                      SUR LA TABLE, INC.
26

27  101249491.2

28

Gibson, Dunn &
Crutcher LLP

                                      15
                    DEFENDANT SUR LA TABLE, INC.'S NOTICE OF REMOVAL