HOYER & ASSOCIATES
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
David C. Lipps (SBN 269933)
dlipps@hoyerlaw.com
4 Embarcadero Center, Ste. 1400
San Francisco, CA 94111
*tel* (415) 766-3535
*fax* (415) 276-1738

Attorneys for Plaintiff
AARON PALM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON PALM, on behalf of himself and all others similarly situated,<br><br>       Plaintiffs,<br><br>     vs.<br><br>SUR LA TABLE, INC., a Corporation, and DOES 1–25<br><br>       Defendants, | Case No. 12-cv-01250-JCS<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**<br><br>Date:  August 2, 2013<br>Time:  9:30 a.m.<br>Dept.:  SF, 15th Fl., Crtrm. G<br>Judge:  Hon. Joseph C. Spero |

1

## **NOTICE OF MOTION**

2

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that on

3  August 2, 2013, at 9:30 a.m., in Courtroom G, 15th floor, at 450 Golden Gate Ave., San

4  Francisco, California, before Honorable Joseph C. Spero, Plaintiff Aaron Palm will and does

5  hereby move the Court for the following relief:

6  1.    An order conditionally certifying the Class for purposes of settlement;

7  2.    An order appointing Richard A. Hoyer, David C. Lipps, and the law firm Hoyer &

8         Associates as Class Counsel;

9  3.    An order appointing Plaintiff Aaron Palm as the Class Representative;

10  4.    An order preliminarily approving the settlement as set forth in the Stipulation of

11        Settlement;

12  5.    An order approving the Class Notice; and

13  6.    An order setting the date for the final approval hearing.

14  This Motion is based on this Notice of Motion, the concurrently filed Memorandum of Points

15  and Authorities and the Declarations of Richard A. Hoyer and Aaron Palm in support

16  thereof, the records in this action, any argument that may be requested at the hearing, and

17  any other matters the Court may deem necessary.

18

19  Date:  July 5, 2013                          HOYER & ASSOCIATES

20

21                                              _____
                                                Richard A. Hoyer
22                                              David C. Lipps
                                                Attorneys for Plaintiff
23                                              AARON PALM

24

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                                    ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   SUMMARY OF THE LAWSUIT AND SETTLEMENT ................................. 1

      A.    Plaintiff's Allegations ..................................................................... 1

      B.    SLT's Position ................................................................................ 3

      C.    Discovery ....................................................................................... 4

      D.    Plaintiff's Liability and Damages Calculation ................................ 5

      E.    Plaintiff's Representation and Participation ................................... 6

      F.    Mediation ....................................................................................... 7

      G.    Key Settlement Terms ................................................................... 7

            1.    The Class ............................................................................ 7

            2.    Notice to the Class ............................................................. 8

            3.    The Released Claims .......................................................... 8

            4.    The Non-Reversionary Settlement Fund............................. 8

            5.    "Checks-Mailed" Payments to the Class ............................ 8

            6.    Payment to the LWDA......................................................... 9

            7.    Service Award, Attorneys' Fees, and Costs........................ 9

            8.    Cy Pres ............................................................................. 10

III.  CLASS CERTIFICATION ....................................................................... 10

      A.    Rule 23(a)(1)—Numerosity .......................................................... 12

      B.    Rule 23(a)(2)—Commonality ....................................................... 12

      C.    Rule 23(a)(3)—Typicality ............................................................ 13

D.   Rule 23(a)(4)—Adequacy of Representation ................................... 14

E.   Rule 23(b)(3)—Predominance and Superiority ............................... 15

   1.   Common Issues Predominate. ............................................ 15

   2.   Class Treatment is the Superior Method. ........................... 16

IV.   PRELIMINARY APPROVAL ..................................................... 17

A.   The Settlement Agreement Meets the Standard for Preliminary Approval. ... 17

   1.   The Settlement is a Result of Serious, Informed, and Noncollusive Negotiations. ...................................................... 18

   2.   The Settlement Has No "Obvious Deficiencies" and is Fair, Reasonable, and Adequate Given the Potential Benefits and Risks of Proceeding in Litigation. .................................................... 19

      a.   General Drawbacks of Proceeding in Litigation ...................... 19

      b.   Risks Relating to the Premium Wages Claim........................... 19

      c.   Risks Relating to the Penalty Claims ....................................... 21

      d.   Potential Benefits of Further Litigation ..................................... 23

      e.   The Settlement Amount is Fair and Reasonable in Light of the Risks and Benefits Posed by Further Litigation........................ 23

   3.   The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class, Nor Does it Provide Excessive Compensation to Counsel.................................... 24

   4.   The Court Should Appoint Rust Consulting as the Settlement Administrator and Approve the Costs of Settlement Administration. .. 27

B.   The Proposed Method of Notice Satisfies Rule 23(e)(1) and 23(c)(2)(B). ..... 27

VI.   CONCLUSION ............................................................... 29

1

## **TABLE OF AUTHORITIES**

2

**State Cases**

3

*Brinker v. Superior Court,* 53 Cal.4th 1004 (2012) ................................................................. 2

4

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001) ...................................................................... 26

5

*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012)........................................... 22

6

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1114 (2007) ........................ 21

7

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) .......................... 23

8

9

**Federal Cases**

10

*Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)........................................... 11

11

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)............................. 10, 11, 15, 16

12

*Arrendondo v. Delano Farms Co.*, 2011 WL 1486612, *17 (E.D. Cal.) ............................. 16

13

*Avilez v. Pinkerton Gov't Services*, 286 F.R.D. 450 (C.D. Cal., Oct. 9, 2012).................... 21

14

*Blum v. Stenson*, 465 U.S. 886, 899 (1984) ...................................................................... 26

15

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992) ........................................ 14

16

*Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. 2009).................... 11

17

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) ....................... 18

18

*Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986) ........................................ 26

19

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).............................. 18

20

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) .................. 12

21

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ...................................... 16

22

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)................................. 18

23

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006–1011 (9th Cir. 2002) .. 26

24

*Gardner v. Shell Oil Co.*, 2011 WL 1522377 (N.D. Cal.) ................................................... 15

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1997) ...................... 12

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) ....................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ........................ 13, 14, 17, 18

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)................................. 13, 14

*In re M.L. Stern Overtime Litigation*, 2009 WL 995864, *3 (S.D. Cal. 2009) ................ 11, 28

*In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ........................................ 18

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).......................................... 18

*In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079–1080 (N.D. Cal. 2007) .......... 17

*In re Traffic Executive Ass'n E.R.R.s v. Long Island R.R.* Co., 627 F.2d 631, 634 (2d Cir. 1980) ...................................................................................................................... 11

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) 26

*Jones v. Spherion Staffing LLC*, 2012 WL 3264081 (C.D. Cal.)........................................... 21

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ..................................... 26

*Linney v. Cellular Alaska P'ship*, 1997 WL 450064, *5 (N.D. Cal.), aff'd, 151 F.3d 1234 (9th Cir. 1998) ............................................................................................................... 18

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) .............................................................................. 14

*Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953, 957 (9th Cir. 2009)......................... 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ......................... 27

*Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284 (C.D. Cal.) ................................... 22

*Ordonez v. Radio Shack, Inc.*, 2013 WL 210223 (C.D. Cal.) .............................................. 20

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D.Cal. 2009) ................................ 15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987) ............................................................................................................................... 25

*Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988)......................................... 25, 26

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122-23 (9th Cir. 2010)............................................. 12

*Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal.1985) ...................................................... 13

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ...................................................... 10

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ................................. 16

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) .................................... 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) ........................................ 26

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011) ............................................ 12

**State Statutes**

Business & Professions  Code § 17200 *et seq*. ...................................................................... 2

Labor Code § 201(a) ............................................................................................................... 2

Labor Code § 203 ............................................................................................................... 2, 22

Labor Code § 226.7 ................................................................................................................. 2

Labor Code § 226(a) ............................................................................................................... 2

Labor Code § 226(e) ........................................................................................................... 2, 22

Labor Code § 2698 *et seq*. ...................................................................................................... 2

Labor Code § 2699(e)(2) ........................................................................................................ 22

Labor Code § 2699(i) .............................................................................................................. 23

**Federal Statutes**

Fed. R. Civ. P. 23(a)(1) ......................................................................................................... 12

Fed. R. Civ. P. 23(a)(3) ......................................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 15

Fed. R. Civ. P. 23(a) ............................................................................................................. 11

Fed. R. Civ. P. 23(a)(2) ..................................................................................... 12

**State Regulations**

Industrial Welfare Commission Wage Order No. 4, section 12 ............................................ 2

## I.    INTRODUCTION

Plaintiff Aaron Palm seeks preliminary approval of a proposed $600,000 non-reversionary class action settlement with Defendant Sur La Table, Inc. ("SLT").  Plaintiff brought this class action on behalf of himself and approximately 3,000 non-exempt employees, alleging that SLT failed to provide rest breaks as required by law and that the class members are entitled to recover premium wages and related statutory and civil penalties.  SLT denies these allegations that it did not comply with the law governing rest breaks.  After extensive discovery and zealous advocacy on both sides, the parties agreed to this settlement, which fairly and adequately compensates the putative class given the merit of the class claims as balanced against the potential benefits, costs, and risks of proceeding with litigation.  The settlement amount represents a significant recovery on the underlying rest break premium wages and will result in payments to class members who do not opt out.  Plaintiff, on behalf of himself and the putative class, therefore respectfully requests that the Court grant preliminary approval of the settlement, certify the proposed class, approve the proposed notice plan, and schedule a final approval hearing.

## II.    SUMMARY OF THE LAWSUIT AND SETTLEMENT

### A.    Plaintiff's Allegations

Defendant, Sur La Table, Inc. ("SLT") is a retailer of specialty kitchenware, selling cookware, cutlery, cooks' tools, and baking and entertaining products.  During the relevant time-period, SLT owned and operated twenty-five retail stores in California.  Except for the Store Managers and Resident Chefs, all of the employees at these stores are designated as non-exempt, hourly-wage workers.  Plaintiff worked for SLT from May 2010 until October 2011 at its Ferry Building store in San Francisco, California.  Plaintiff was hired as a Sales Associate and was later promoted to Assistant Manager.

1    Plaintiff filed the instant action on February 10, 2012.  Plaintiff brought seven causes

2   of action on behalf of himself and all other SLT hourly employees: (1) unpaid rest break

3   premium wages in violation of California Labor Code § 226.7, (2) statutory penalties under

4   Labor Code § 226(e) for failure to provide accurate wage statements in violation of Labor

5   Code § 226(a), (3) statutory penalties under Labor Code § 203 for failure to pay all wages

6   owed upon termination in violation of Labor Code § 201(a), (4) unfair and unlawful business

7   practices in violation of California Business & Professions  Code § 17200 *et seq*., (5)

8   injunctive relief, (6) declaratory relief, and (7) civil penalties under the Labor Code Private

9   Attorneys General Act of 2004, Labor Code § 2698 *et seq.* ("PAGA").  Plaintiff's second

10   through seventh causes of action are entirely derivative of the rest break premium wage

11   cause of action.

12    Plaintiff's claims are premised on the Industrial Welfare Commission Wage Order

13   No. 4, section 12, which requires that employers authorize and permit a ten-minute rest

14   break every four hours of work, or major fraction thereof.  Wage Order No. 4 further

15   provides that, if the employer fails to provide the minimum required rest breaks, the

16   employer shall pay each affected employee premium wages of one hour of pay for every

17   day there is a violation.  The California Supreme Court in *Brinker v. Superior Court,* 53

18   Cal.4th 1004 (2012), explained that the "major fraction thereof" requirement means that an

19   employee is entitled to ten minutes rest time for shifts greater than 3.5 but less than 6 ("3.5

20   to 6") hours long, twenty minutes rest time for a shift greater than 6 but less than 10 ("6 to

21   10") hours long, and thirty minutes rest time for a shift greater than 10 but less than 14 ("10

22   to 14") hours long.  *Id.* at 1029.

23    During Plaintiff's tenure at SLT, and up until June 2012, SLT's written rest break

24   policy provided that employees were entitled to one fifteen-minute break for every four

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                    2

hours worked, but did not reference the "major fraction thereof" language:

> All non-exempt employees receive a 15-minute paid rest break for each four hours of working time, unless the nature and circumstances of the non-exempt employee's work allows for the equivalent of 15 minutes rest taken intermittently or prevents Sur La Table from establishing and maintaining the regularly scheduled rest period. . . . *Or otherwise required by state or local Laws.

Declaration of Richard A. Hoyer ("Hoyer Decl."), ¶ 33.  Under a literal reading of the policy, employees were to receive no breaks for working shifts of more than 3.5 hours but less than 4 hours in length ("3.5 to 4"), only one 15-minute break for a shift greater than 6 but less than 8 ("6 to 8") hours long, and only two breaks for a shift greater than 10 but less than 12 ("10 to 12") hours long (collectively the "Relevant Shifts").  Plaintiff, who typically worked 6-to-8-hour shifts, was initially provided two rest breaks.  However, in late 2010, his new Store Manager changed the practice so Plaintiff only received one 15-minute rest break on each of his shifts.  He filed the instant case alleging that he and other SLT employees were unlawfully denied rest breaks and premium wages as a matter of corporate policy.

### B.    SLT's Position

SLT denies all of the claims alleged by Plaintiff.  SLT contends that its employees have been authorized and permitted to take rest breaks in compliance with state law and that it is not liable for any amounts in relation to rest breaks.  SLT further contends that the rest break policy was neither facially nor practically illegal and that the majority of SLT's Store Managers' and Assistant Managers' practices resulted in employees often receiving more break time than the law requires.

SLT has also taken the position that this case is not suitable for class treatment because shift lengths, rest break scheduling and rest break approaches varied from

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                                    3

1     manager to manager and employee to employee.  Many managers did not interpret the rest

2     break policy literally, with the majority of managers typically scheduling two rest breaks for

3     6 to 8-hour shifts and thus giving effect to the "major fraction thereof" language in the

4     applicable wage order.  Even where a second break was not *scheduled*, most managers

5     allowed employees to take a second break upon request.

6         SLT further contends that waiting time penalties, inaccurate wage statement

7     penalties, and California Labor Code § 210 penalties are not recoverable for rest break

8     violations because rest break premium wages are not "wages earned."  Even assuming

9     Plaintiff could establish a basis for liability, a court would not award the maximum amount of

10     civil penalties because, among other reasons, SLT substantially complied with the law, its

11     managers acted in good faith at all times, and the amount of rest break premium wages

12     that would be owed following a full trial in accordance with SLT's right to due process, if

13     any, would be small in comparison to the penalties sought.

14         **C.**    <u>**Discovery**</u>

15         Plaintiff conducted meaningful, but targeted, discovery during the course of the

16     litigation.  Hoyer Decl., ¶¶ 7–19.  Early on in discovery, the parties agreed to conduct some

17     informal discovery in an effort to prepare for an early mediation.  Id.  For Plaintiff's part, this

18     approach was beneficial to minimize costs and attorneys' fees for the putative class prior to

19     settlement discussions.  Id.  During the course of discovery, SLT produced documents

20     including SLT's employee handbooks, a verified chart reflecting Store Manager practices

21     with respect to shift-length scheduling and rest breaks (Break Practices Chart ("BPC")), and

22     Zone Charts, which were used by some managers to note the time of rest breaks.  Id.at ¶¶

23     10, 14, 15.  SLT also produced data regarding the number of potential class members, full-

24     time versus part-time status, average pay rates, the number of employees terminated

during the relevant period, and the number of shifts of various lengths worked during the

liability period (Shifts Data). Id. at ¶ 18. In addition to obtaining the BPC, Plaintiff deposed

witnesses who had held various positions within SLT during the relevant time period,

including Sales Associate, Assistant Store Manager, Store Manager, District Manager and

Area Manager. Id. at ¶ 9.

The BPC purported that each manager scheduled a number of different shift lengths,

and the shift length scheduling practice varied from manager to manager. Id. at ¶¶ 11–13.

The BPC revealed that some managers followed the rest break policy literally, but others

did not. Id. In order to test the validity of SLT's BPC, Plaintiff analyzed Zone Charts for

each of the stores during the entire class period. Id. at ¶¶ 14–16. This task involved

reviewing approximately 16,000 pages of "Zone Charts," which included scheduling

information. Id. In addition, Plaintiff engaged a third-party investigator to conduct

interviews of putative class members regarding their experiences and also engaged two

expert witnesses to assist in explaining standards in two different areas of policy and

practice. Id. at ¶ 17.

### D. Plaintiff's Liability and Damages Calculation

Based on the practices indicated in the BPC as modified by the data that Plaintiff

obtained through his independent review of the Zone Chart data and putative class member

survey interviews, Plaintiff calculated 26,183 violative shifts, or, in other words, a 52 percent

overall violation rate. Hoyer Decl., ¶ 21. The total violative shifts consist of 14,588 shifts

worked by part-time employees and 8,362 shifts worked by full-time employees. Id.

Plaintiff calculated the violation rate for part-time shifts as 67 percent and 43 percent for

full-time shifts. Id. Based on the number of violative shifts, and the average full-time and

part-time hourly wage rates, Plaintiff calculated a maximum possible recovery of $320,540

1    in premium wages and $43,766 in interest through the date of the filing of this Motion, for a

2    total of $364,306.  Id. at ¶ 23.

3        **E.    Plaintiff's Representation and Participation**

4        While employed at SLT, Plaintiff was an advocate of employee rights.  Declaration of

5    Aaron Palm ("Palm Decl."), ¶ 2.  When his fellow employees complained to him about not

6    getting a second rest break, he, in turn, took their grievances to upper management and

7    requested that a second break be given.  Id.  This lawsuit has been no different.  At all

8    times throughout this case, Plaintiff has steadfastly represented the interests of the putative

9    class.  Hoyer Decl., ¶ 26.  Plaintiff's agreement to the class settlement was not contingent

10   on the settlement of his individual case or on the Court awarding him an incentive payment.

11   Palm Decl., ¶ 2.

12       In addition to participating in two defense witness depositions and identifying and

13   reviewing potentially relevant documents, Plaintiff assisted counsel in responding to SLT's

14   requests for production of documents and special interrogatories, sat for an all-day

15   deposition, and participated in an all-day mediation session.  Id. at ¶ 3.  Plaintiff's

16   assistance was integral to the prosecution of this case.  Hoyer Decl., ¶ 24.  Plaintiff had an

17   intimate knowledge of his store's practices regarding timekeeping, wage payment

18   processing, shift length scheduling, and rest break policies and practices.  Id.  Palm Decl., ¶

19   3.  His input was invaluable since he was able to draw on his experience both as a Sales

20   Associate and an Assistant Manager.  Id.  Indeed, Plaintiff's counsel consulted Plaintiff by

21   telephone and email about once per week and, at times, much more frequently than that.

22   Id.  Plaintiff 's prompt responses enabled this case to proceed timely to a successful

23   mediation.  Hoyer Decl., ¶ 24.

24   / / /

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                                    6

**F.     Mediation**

On March 7, 2013, the parties participated in an all-day mediation with highly respected and experienced mediator David Rotman of Gregorio, Haldeman & Rotman.  Id. at ¶ 25.  Settlement was reached after eight hours of mediation, but only after Mr. Rotman made a mediator's proposal that was accepted by both sides.  Id.  The settlement negotiations were conducted at arm's-length.  Id.  The parties agreed in principle to settle the case in its entirety.  Id.  After the mediation, the parties continued to negotiate vigorously for several months before finalizing the terms of the Stipulation of Settlement ("Settlement Agreement" or "SA"), filed herewith.  Id.

**G.     Key Settlement Terms**

**1.     The Class**

Potential Class Members ("PCMs") are all persons employed by SLT as non-exempt, hourly employees within the State of California at any time between July 24, 2010 and the date of entry of the Court's order granting preliminary approval of the Settlement Agreement.  SA, ¶ II.A.7.  There are approximately 3,000 PCMs.  Hoyer Decl., ¶ 27.  The Settlement Class is defined as all Potential Class Members who do not timely and properly opt out.  SA, ¶ II.A.22.  Early on in discovery, SLT informed Plaintiff of a recent class action settlement involving rest break and related penalty claims against SLT (in addition to missed meal break claims).  Hoyer Decl., ¶ 6.  The settlement was in *Mills v. Sur la Table, Inc.*, Los Angeles Superior Court Case No. BC421265.  Id.  The settlement released all missed rest break and related penalty claims.  Id.  It was preliminarily approved by the court on July 23, 2010.  Id.  Thus, July 24, 2010 was established as the start date for the liability period in the instant case.

/ / /

### 2.    Notice to the Class

The Settlement Administrator will mail each PCM a notice regarding his or her rights and obligations under the Settlement Agreement, including each PCM's estimated potential recovery, how the amount was calculated, an opt-out form, the nature of the litigation and scope of the release, instructions for objecting, class counsel's contact information, and other pertinent information.  Id. at ¶ II.K.2.  PCMs will have 45 days from the date the notice is mailed to file objections, opt-out, or dispute the basis of the estimated recovery amount. Id. at ¶¶ II.A.16 and II.I.

### 3.    The Released Claims

Settlement Class Members ("SCMs") will release all rest break claims against SLT, including claims for penalties.  Id. at ¶ II.H.  However, to the extent permitted by law, the released claims will not include penalty claims that arise from allegations other than those for failure to pay missed rest break premiums.  Id. at ¶ II.H.3.

### 4.    The Non-Reversionary Settlement Fund

In exchange for the release by the SCMs, SLT has agreed to pay $600,000 (the "Settlement Fund").  Id, ¶ II.E.1.  The Settlement Fund is non-reversionary, so any funds not distributed to the SCMs, or otherwise allocated by the court, will be sent to a *cy pres* beneficiary, as explained further below.  Id. at ¶ II.G.5.

### 5.    "Checks-Mailed" Payments to the Class

SCMs are not required to submit a claim for payment.  Rather, the settlement amounts will be calculated by the Settlement Administrator and are mailed as a matter of course.  Id. at ¶ II.A.22, II.G.1, II.M.1.  Checks will be valid and negotiable for ninety days from the date of issuance.  Id. at ¶ II.G.4.  Payments will be made to SCMs on a *pro rata* basis out of the Net Settlement Fund based on each SCM's number of weeks worked,

status as full-time versus part-time, and status as a current or former employee.  Id. at ¶

II.F.  Weeks worked after May 28, 2012 will be calculated at a five percent (.05) value since

Plaintiff has concluded that the data provided reflects little to no rest break violations

occurred after SLT clarified its policy and managers began scheduling shorter shifts.  Id.

Hoyer Decl., ¶¶ 9, 13, 18.

### 6.     Payment to the LWDA

For purposes of Labor Code § 2699(i), $10,000.00 of the Settlement Fund, or such

other amount as the Court deems appropriate, shall be treated as penalties recovered

under PAGA.  Id. at ¶ II.E.5.  Seventy-five percent of the PAGA payment will be paid to the

Labor and Workforce Development Agency ("LWDA") and twenty-five percent will be

apportioned to the Net Settlement Fund.  Id.

### 7.     Service Award, Attorneys' Fees, and Costs

Plaintiff intends to petition the Court for a $15,000 service award to Plaintiff, up to

$250,000 in attorneys' fees, and up to $33,000 in costs, all to be paid from the Settlement

Fund.  Id. at ¶ II.E.2.  Defendant has agreed not to oppose Plaintiff's petition for these

amounts.  Id. at ¶ II.P.2.B.  However, the settlement agreement is not conditioned on the

Court awarding any specific amounts of attorneys' fees and costs.  Id. at ¶ II.E.2.

The parties have agreed to the appointment of Rust Consulting, Inc. to act as the

third-party Settlement Administrator.  Id. at ¶ II.E.4.  The Settlement Administrator will

provide services including, but not limited to, mailing and re-mailing class notices,

processing opt-out requests, calculating individual settlement awards, preparing reports for

the Court and the parties, and verifying payments.  Id.  The Settlement Administrator

estimates that such services will cost $30,000, which will be paid from the Settlement

Funds, subject to approval by the Court.  Id.

1          **8.    *Cy Pres***

2          Any remaining funds will be distributed to the *cy pres* beneficiary, Bay Area Legal

3   Aid.  Id. at ¶ II.G.5.  Bay Area Legal Aid provides free civil legal advice, counsel and

4   representation in a variety of practice areas, including employment law, to low-income

5   people in the San Francisco Bay Area.  "Bay Area Legal Aid, What We Do",

6   www.baylegal.org/what-we-do.

7                    **III.    CLASS CERTIFICATION**

8          For purposes of the proposed settlement, and to facilitate notice to the proposed

9   class, Plaintiff requests that the Court provisionally certify a settlement class as defined

10  above and in the Settlement Agreement to include: all persons employed by SLT as non-

11  exempt, hourly employees within the State of California at any time between July 24, 2010

12  and the date of entry of the Court's order granting preliminary approval of the Settlement

13  Agreement.  SA, ¶ II.A.7.

14         When considering a settlement reached prior to class certification, the Court must

15  assess "both the propriety of the certification and the fairness of the settlement."  *Staton v.*

16  *Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).  First, the Court must assess whether a

17  class exists.  *Id*. (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

18  Second, at the final approval stage, after the class members have been notified of the

19  proposed settlement and had an opportunity to comment or opt out, the Court must

20  evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable,"

21  and, in so doing, "must pay undiluted, even heightened, attention to class certification

22  requirements."  *Id*.

23         At the preliminary approval stage, however, the Court determines only whether the

24  settlement falls "within the range of possible approval, such that it is worthwhile to give the

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                              10

1   class notice of the settlement and proceed with a formal fairness hearing." *In re M.L. Stern*

2   *Overtime Litigation*, 2009 WL 995864, *3 (S.D. Cal. 2009); see also *Acosta v. Trans Union*,

3   243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is

4   appropriate, the settlement need only be potentially fair, as the Court will make a final

5   determination of its adequacy at the hearing on Final Approval, after such time as any party

6   has had a chance to object and/or opt out.").

7        "[I]f the proposed settlement appears to be the product of serious, informed, non-

8   collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

9   treatment to class representatives or segments of the class, and falls within the range of

10  possible approval, then the court should direct that the notice be given to the class

11  members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp*., 2009 WL

12  3349549, *2 (N.D. Cal. 2009).  Because preliminary approval is merely a provisional step

13  beginning the settlement approval process, any doubts are resolved in favor of preliminary

14  approval.  See *In re Traffic Executive Ass'n E.R.R.s v. Long Island R.R*. Co., 627 F.2d 631,

15  634 (2d Cir. 1980).

16       The four prerequisites of numerosity, commonality, typicality and adequacy of

17  representation as set forth in Federal Rule of Civil Procedure 23(a) must be satisfied to

18  certify a class for settlement purposes.  *Amchem*, 521 U.S. at 620.  Once the threshold

19  requirements are met, the plaintiff must also show that the class is maintainable under one

20  category of Rule 23(b).  The parties have agreed to request conditional certification of the

21  class pursuant to Rule 23(b)(3).  All of the factors established by Federal Rules of Civil

22  Procedure are present in this case, making certification of a settlement class appropriate as

23  set forth below.

24  / / /

A.      **Rule 23(a)(1)—Numerosity**

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts have found the numerosity requirement met when the class comprises more than 40 members.  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011).  See also *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1997) (numerosity established with approximately 110 putative class members).  Here, numerosity exists because the putative class consists of approximately 3,000 individuals.  Hoyer Decl., ¶ 27.

B.      **Rule 23(a)(2)—Commonality**

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class."  Commonality is a test readily met where the defendant has acted uniformly in regard to the members of the class.  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (recognizing "[c]lass relief is particularly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class").  All questions of fact and law need not be common to satisfy the rule.  See *Rodriguez v. Hayes*, 591 F.3d 1105, 1122-23 (9th Cir. 2010) (recognizing commonality is satisfied if the named plaintiffs share at least one question of fact or law with the class, and that the term "common," as used in Civil Rule 23(a)(2), does not mean "complete congruence").  "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011) (citations omitted).

Here Plaintiff alleges that SLT committed widespread rest break violations based on its written rest break policy.  Common questions of law and fact include: (1) whether SLT's written rest break policy was in violation of the law; (2) whether, in fact, there were uniform

1  rest break violations as a result of the policy; (3) whether SLT had a corporate-wide policy

2  and practice of failing to compensate PCMs with premium wages for missed rest breaks;

3  (4) whether failure to pay rest break premium wages gives rise to waiting time penalties; (5)

4  whether failure to pay rest break premium wages gives rise to inaccurate wage statement

5  penalties; (6) whether SLT's actions give rise to civil penalties under Labor Code §§ 2699(f)

6  and 558; and (7) whether SLT's actions were willful.  These seven common questions

7  going to the heart of SLT's liability exceed the minimum burden of establishing a single

8  common question.  Thus, the commonality requirement is satisfied.

9       **C.**     **Rule 23(a)(3)—Typicality**

10       The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the

11  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P.

12  23(a)(3).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Under this Rule's

13  "permissive standards," representative claims are "typical" if they are "reasonably co-

14  extensive with those of absent class members; they need not be substantially identical." *Id.*

15  "The test of typicality 'is whether other members have the same or similar injury, whether

16  the action is based on conduct which is not unique to the named plaintiffs, and whether

17  other class members have been injured by the same course of conduct.'"  *Hanon v.*

18  *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp,* 108

19  F.R.D. 279, 282 (C.D.Cal.1985)).

20       Here, with the exception of Plaintiff's wrongful termination claim, Plaintiff's claims are

21  typical of the PCMs.  Plaintiff and the PCMs missed rest breaks while working at SLT, in

22  part because of the application of the written rest break policy.  All of the other class claims

23  are derivative of the rest break claim.  And although Plaintiff has a claim for waiting time

24  penalties while others who were not terminated do not, this does not destroy typicality.  See

1    *Hanon*, *supra*.  Plaintiff's claims are inclusive of every claim that has been alleged on a

2    class-wide basis, and all of the PCMs, including Plaintiff, have been "injured by the same

3    course of conduct."  Thus, the typicality requirement is met.

4            **D.**     **Rule 23(a)(4)—Adequacy of Representation**

5           The fourth and final Rule 23(a) requirement is adequacy, which requires (1) that the

6    representative plaintiffs do not have conflicts of interest with the putative class, and (2) that

7    the class is represented by qualified and competent counsel who will prosecute the case on

8    its behalf.  Fed. R. Civ. P. 23(a)(4).  *Hanlon*, *supra*, 150 F.3d at 1020; see also *Local Joint*

9    *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,

10   1162 (9th Cir. 2001); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992)).

11          In the instant case, Plaintiff and the PCMs are aligned in interest because they seek

12   the same relief against SLT for rest break premium wages and related penalties.  Plaintiff's

13   recovery on his class claims is calculated on a *pro rata* basis, just like every other PCM.

14   Plaintiff and some of the PCMs have an additional claim for waiting time penalties, but that

15   does not put Plaintiff in conflict with PCMs who do not have such a claim.  There is no

16   evidence to suggest that pursuing waiting time penalties, in addition to the shared claims,

17   will somehow jeopardize or marginalize the shared claims.  Hoyer Decl., ¶ 26.  Plaintiff is

18   not aware of any facts that suggest a conflict of interest between Plaintiff and the PCMs.

19   Id.  Plaintiff's counsel is well-situated to assume the responsibilities of Class Counsel.  Id. at

20   ¶¶ 2–5.  He is an experienced employment and class action litigator with over 20 years of

21   experience in the field.  Id.  He has been counsel in a number of complex litigation and

22   class action cases.  Id.  He has zealously pursued the interests of the putative class since

23   the inception of this litigation and is fully qualified to carry out the responsibilities of Class

24   Counsel to effectuate the Settlement Agreement.  Id. at ¶¶ 2–5, 26.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**          14

E.      **Rule 23(b)(3)—Predominance and Superiority**

1.      **Common Issues Predominate.**

Under Rule 23(b)(3), a class may be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) covers cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

The predominance inquiry of Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953, 957 (9th Cir. 2009).  The focus is on "the relationship between the common and individual issues."  Id.

The proposed class satisfies the predominance test.  The liability issues raised in the action are all essentially based on SLT's written corporate rest break policy and evidence regarding how the policy was implemented at the manager level.  The legal issues surrounding whether rest break violations give rise to waiting time penalties and inaccurate wage statement penalties can also be decided on a class-wide basis by the court.  See *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D.Cal. 2009) (rest break class certified where the plaintiff alleged that the employer's corporate-wide compensation policy failed to account for missed breaks and compensate employees with premium wages). *Gardner v. Shell Oil Co.*, 2011 WL 1522377 (N.D. Cal.) (granting class certification in meal break case where the plaintiff alleged a company-wide illegal policy).  See also *Dilts v.*

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT                                    15

1   *Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) (granting class certification in meal

2   and rest break case where the plaintiff alleged a company-wide illegal policy,

3   notwithstanding variations in employee circumstances).

### 2.      Class Treatment is the Superior Method.

5   A class action is superior "[w]here classwide litigation of common issues will reduce

6   litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

7   1227, 1234 (9th Cir. 1996).  "Courts recognize that employer practices and policies with

8   regard to wages and hours often have an impact on large numbers of workers in ways that

9   are sufficiently similar to make class-based resolution appropriate and efficient."

10  *Arrendondo v. Delano Farms Co.*, 2011 WL 1486612, *17 (E.D. Cal.).

11  The class action mechanism is the superior method for resolving this lawsuit.  This is

12  particularly so at the present stage where the parties have stipulated to a settlement.  Since

13  the Court would only be conditionally certifying a class for settlement purposes, there is no

14  issue regarding trial manageability.  *Amchem*, 521 U.S. at 620 ("Confronted with a request

15  for settlement-only class certification, a district court need not inquire whether the case, if

16  tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D),

17  for the proposal is that there be no trial.").  A class action is superior because there are

18  thousands of PCMs, and their individual claims are too small to justify separate actions.  As

19  a result, PCMs will likely be unmotivated to retain counsel and file their own case, which

20  would leave the PCMs uncompensated and SLT's rest break violations unchallenged.

21  Even if PCMs wanted to bring individual actions, the interest any individual PCM might

22  have in adjudicating his or her claim on an individual basis is outweighed by the efficiency

23  of the class mechanism.  Moreover, every PCM has the opportunity to opt out of the

24  settlement and pursue their own individual claims in a separate action if they so choose.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                    16

1  Thus, a class treatment is the superior method.[1]

2  ## IV.   PRELIMINARY APPROVAL

3  ### F.   The Settlement Agreement Meets the Standard for Preliminary Approval.

4  Assessing a settlement proposal under this standard requires the district court to

5  balance a number of factors:

6  [T]he strength of the plaintiffs' case; the risk, expense, complexity, and
   likely duration of further litigation; the risk of maintaining class action
7  status throughout the trial; the amount offered in settlement; the extent of
   discovery completed and the stage of the proceedings; the experience
8  and views of counsel . . . and the reaction of the class members to the
   proposed settlement.

9  *Hanlon*, *supra*, 150 F.3d at 1026.  "Settlement approval that takes place prior to formal

10 class certification requires a higher standard of fairness," since, at that stage, there is a

11 higher risk of a breach of fiduciary duty to the class and collusion between Class Counsel

12 and the defendant.  *Id.*

13 Yet, where a settlement agreement is a result of arm's-length negotiations, the

14 agreement is entitled to "an initial presumption of fairness."  *In re Tableware Antitrust Litig.,*

15 484 F.Supp.2d 1078, 1079–1080 (N.D. Cal. 2007).  *Linney v. Cellular Alaska P'ship*, 1997

16 WL 450064, *5 (N.D. Cal.), aff'd, 151 F.3d 1234 (9th Cir. 1998) (citing *Ellis v. Naval Air*

17 *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  "Additionally, there is a strong judicial

18

19 [1] There is a related case pending against SLT entitled *Sandra Lew v. Sur La Table, Inc.*,
   Case No. CV 13-151 GW CW (C.D. Cal.), but the existence of that case does not pose any
20 difficulties to resolving the instant case.  SLT previously filed a Notice of Pendency of Other
   Actions regarding the *Lew* case.  Docket Entry No. 42.  That case was filed on December 3,
21 2012, almost a year after the instant case was filed.  The *Lew* complaint contains class
   missed rest break allegations, but it does not specifically mention SLT's corporate rest
22 break policy as the cause.  The *Lew* complaint alleges nine other causes of action including
   unpaid overtime, missed meal breaks, failure to keep payroll records, and unreimbursed
23 business expenses.  No class has yet been certified in that case.  The release provided for
   in the Settlement Agreement in this case focuses on rest break claims.
24

1   policy that favors settlement, particularly where complex class action litigation is

2   concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class*

3   *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  "[T]here is an overriding

4   public interest in settling and quieting litigation . . . particularly . . . in class action suits which

5   are now an ever increasing burden to so many federal courts and which frequently present

6   serious problems of management and expense."  *Van Bronkhorst v. Safeco Corp.*, 529

7   F.2d 943, 950 (9th Cir. 1976).  See also *Churchill Village, LLC v. General Elec.*, 361 F.3d

8   566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995);

9   and *Class Plaintiffs v. City of Seattle*, *supra*.  Furthermore, the Court must give "proper

10   deference" to the settlement reached in this case:

11          [T]he court's intrusion upon what is otherwise a private consensual
           agreement negotiated between the parties to a lawsuit must be limited to
12         the extent necessary to reach a reasoned judgment that the agreement is
           not the product of fraud or overreaching by, or collusion between, the
13         negotiating parties, and the settlement, taken as a whole, is fair,
           reasonable and adequate to all concerned.
14

    *Hanlon*, *supra*, 150 F.3d at 1027.
15
                          **1.      The Settlement is a Result of Serious, Informed, and**
16                                **Noncollusive Negotiations.**

17          As a condition for early mediation, Plaintiff required that SLT produce documents

18   and information necessary to reliably establish the extent of SLT's liability and damages.

19   Hoyer Decl., ¶¶ 8–21.  Plaintiff conducted two key depositions and propounded requests for

20   production of documents, which resulted in the production of the verified BPC (Break

21   Practices Chart), Zone Charts, and Shifts Data.  Id. at ¶¶ 8, 10, 15, 18.  Even though SLT

22   was cooperative in discovery, the parties were by no means collusive.  Plaintiff spent a

23   significant amount of effort demanding and scrutinizing relevant discovery.  Id. at ¶¶ 8–21.

24   At mediation, the parties were at an impasse until the mediator ultimately suggested a

1  mediator's proposal at the end of the day.  Id. at ¶ 25.  All of the foregoing establishes that

2  the parties' negotiations have been serious, informed, and noncollusive.

3          **2.      The Settlement Has No "Obvious Deficiencies" and is Fair,**
                   **Reasonable, and Adequate Given the Potential Benefits and Risks**
4                  **of Proceeding in Litigation.**

5                      1.      General Drawbacks of Proceeding in Litigation

6          As in any lawsuit, even assuming Plaintiff and the putative class prevail on their

7  claims, there are drawbacks of proceeding with litigation.  A significant drawback in this

8  case is the potential time spent waiting for potential recovery.  The parties would likely not

9  proceed to trial for another year since class certification and trial preparation would require

10  more in-depth discovery, including depositions of all managers and issuing questionnaires

11  to all PCMs.  PCMs would have to spend time responding to discovery inquiries from both

12  parties—class questionnaires from Plaintiff's counsel, and, potentially, depositions by SLT.

13  While further discovery might be helpful to Plaintiff and the putative class, it also has the

14  potential to reveal damaging facts, like a greater variation in managers' implementation of

15  the rest break policy, for instance.  Post-certification or post-trial appeals could take several

16  years to resolve.  Assured receipt of money now is preferable, particularly given the

17  possibility that the costs of litigation could diminish any future recovery.

18                      2.      Risks Relating to the Premium Wages Claim

19          Proceeding on the rest break claims presents significant risk to the putative class.

20  Even though Class Counsel is confident that a class would be certified, there are a number

21  of obstacles to class certification.  The evidence shows that at least some managers did not

22  read the corporate rest break policy literally, and others applied their own interpretations,

23  thus suggesting a lack of uniform application of the policy.  Hoyer Decl., ¶¶ 9–11.

24  Managers' approaches to scheduling shifts and rest breaks varied, with a number of

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                          19

1   managers claiming that they gave extra rest breaks upon request.  Id.  SLT would argue

2   that these factors, among others, preclude class treatment for the purposes of trial since

3   evidence would have to be submitted regarding each manager's practices and SLT would

4   be entitled to examine each individual at trial so that it could defend itself in accordance

5   with due process.  See, e.g., *Wal-Mart Stores, Inc.,* 131 S.Ct. at 2561; *Ordonez v. Radio*

6   *Shack, Inc.*, 2013 WL 210223 (C.D. Cal.) (individual issues found to predominate where

7   illegal rest break policy was not implemented uniformly).

8          Of course, Plaintiff would argue that requiring an employee to request a second rest

9   break would not satisfy the "authorize and permit" standard of the Wage Order, since

10  employees may feel discouraged from requesting a break.  However, Plaintiff is unaware of

11  any case law directly ruling on this issue, and the potential problem of individualized issues

12  nevertheless remains.  Even if Plaintiff is able to certify a class action, there is a risk that

13  the class might be decertified before or at trial if the Court determines that individualized

14  issues predominate.

15         Even if the claims were certified, the class would face obstacles to proving liability.

16  While Plaintiff believes he and the class would be able to overcome these obstacles, they

17  nevertheless present significant risks to the litigation.  First, there is no complete record of

18  rest break schedules.  The Zone Charts are illuminating, but they are not conclusive.  Many

19  managers did not indicate breaks on the Charts at all.  Moreover, where a manager

20  indicates only one rest break on a Zone Chart, it is unclear whether that establishes that

21  another rest break was not authorized or permitted.  SLT contends that managers

22  authorized or permitted breaks that were not reflected on the Charts.  Proving or disproving

23  that issue could involve testimony from employees and managers.  For the foregoing

24  reasons, an estimated 65 percent chance of success on the rest break premium wages

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                    20

1    claim is fair and reasonable.

2                        3.    Risks Relating to the Penalty Claims

3          The class penalty claims present significant difficulties for a number of reasons.

4    First of all, the only class penalty claims that are directly related to rest break violations are

5    section 2699(f) and section 558 penalties.  The remaining penalties alleged are only

6    indirectly related to the underlying rest break violation.  Specifically, section 210 penalties

7    are for failure to pay wages, section 203 waiting time penalties are for failure to pay all

8    wages owed upon termination, and sections 226 and 226.3 establish penalties for failure to

9    provide accurate wage statements.  SLT argues that these penalties cannot be recovered

10   in this case because rest break premium wages are not "wages" within the meaning of

11   these penalty statutes.  Of course, Plaintiff will argue that they apply, but there is a

12   significant risk that the Court will not agree.  Or, at least, there is a significant risk that this

13   case will languish on appeal given the lack of controlling case law on the issue.

14         Plaintiff is aware of only three cases that have directly addressed this issue.  The

15   only reported opinion is in *Avilez v. Pinkerton Gov't Services*, 286 F.R.D. 450 (C.D. Cal.,

16   Oct. 9, 2012).  The court in *Avilez* held that a claim for inaccurate wage statement penalties

17   can be based on a claim for missed rest breaks since rest break premium wages "are a

18   form of wages," citing to the California Supreme Court decision in *Murphy v. Kenneth Cole*

19   *Productions, Inc.*, 40 Cal.4th 1094, 1114 (2007).  The decision in *Avilez* is on appeal.

20         Two unreported Central District cases went the other way: *Jones v. Spherion*

21   *Staffing LLC*, 2012 WL 3264081 (C.D. Cal.), and *Nguyen v. Baxter Healthcare Corp.*, 2011

22   WL 6018284 (C.D. Cal.).  *Jones* and *Nguyen* both held that a claim for rest break premium

23   wages does not give rise to claims for inaccurate wage statement penalties or waiting time

24   penalties.  The Court in *Jones* relied on the California Supreme Court's decision in *Kirby v.*

1   *Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012), which held that an action for missed

2   break premium wages is really an action for missed breaks, not for unpaid wages.  Both the

3   *Jones* and *Nguyen* Courts concluded held that the California Legislature did not intend for

4   the penalties to act as a double recovery for break violations.  The issue is before the Ninth

5   Circuit now in *Avilez*.  Without the benefit of a controlling decision from the Ninth Circuit or

6   any California appellate court, there is a risk that the Court in this case would determine

7   Plaintiffs are not entitled to recover all of the requested penalties.  The settlement thus

8   benefits the class members by providing recovery that is otherwise at risk.

9          Even if the Court were to ultimately side with Plaintiff on this issue, liability is not a

10  foregone conclusion.  Waiting time penalties require proof of "willfulness," and inaccurate

11  wage statement penalties require proof of an even higher, "knowing and intentional,"

12  standard.  Labor Code §§ 203 and 226(e).  Plaintiff believes that he could prevail on these

13  issues, but they are not without significant risk since SLT will claim that if employees were

14  missing their rest breaks, it did not know this, and also that Labor Code section 226 does

15  not contemplate a claim for failure to pay amounts that were not known to be owed.  For the

16  foregoing reasons, a six percent and five percent estimated chance of success for waiting

17  time and inaccurate wage statement penalties, respectively, is fair and reasonable.

18         With respect to those penalties that are civil, rather than statutory, the amount

19  awarded is left to the Court's discretion.  Penalties from sections 2699(f), 558, and 226.3

20  are all civil penalties subject to reduction by the court pursuant to Labor Code § 2699(e)(2):

21             In any action by an aggrieved employee seeking recovery of a civil penalty
             available under subdivision (a) or (f), a court may award a lesser amount
22           than the maximum civil penalty amount specified by this part if, based on
             the facts and circumstances of the particular case, to do otherwise would
23           result in an award that is unjust, arbitrary and oppressive, or confiscatory.

24  See, e.g., *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) (trial

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                                    22

1  court reasonably determined that an award of the maximum penalty amount would be

2  unjust).  Here, SLT will argue that the Court should not award the maximum amount of

3  penalties for a number of reasons, including, but not limited to, the fact that SLT

4  substantially complied with the law, SLT and its managers acted in good faith at all times,

5  many employees received more rest time than they were entitled to receive under the law,

6  and the amount of penalties sought is disproportionate to the underlying claims.  Hoyer

7  Decl., ¶ 20.  Finally, Plaintiff and the putative class would only be entitled to 25 percent of

8  any civil penalty award, since 75 percent of the penalties must be paid to the LWDA

9  pursuant to Labor Code § 2699(i).  For the foregoing reasons, $10,000 is a fair and

10  reasonable sum to apportion to civil penalties.

### 4. Potential Benefits of Further Litigation

12  Though the risks of proceeding in litigation are significant, there are some potential

13  benefits.  Further discovery may uncover a higher violation rate.  However, the chances of

14  discovering a significantly higher violation rate are low given that SLT's BPC was verified

15  under oath, and Plaintiff confirmed from the Zone Chart data and PCM interviews that much

16  of the information on the BPC was accurate.  Another potential benefit is that, if Plaintiff and

17  the putative class prevail, the Court could order SLT to pay all of Class Counsel's attorney's

18  fees.

### 5. The Settlement Amount is Fair and Reasonable in Light of the Risks and Benefits Posed by Further Litigation.

On the basis of SLT's sworn testimony and Plaintiff's further investigation into the

21  Zone Charts and PCM interviews, Plaintiff calculated a maximum possible recovery of

22  $364,306 for rest break premium wages and interest, $1,169,528 for waiting time penalties,

23  and $951,831 for inaccurate wage statement penalties.  Hoyer Decl., ¶ 23.  As modified by

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                    23

the estimated chance of success—65 percent, 6 percent, and 5 percent, respectively—the

totals are $236,799, $46,781, and $28,555, respectively, for a total of $312,135.  Id. at ¶ 28.

A reasonable settlement would be even less than that, taking into account the general

drawbacks of continued litigation like delayed recovery, having to participate in discovery

and possibly trial, higher costs, and the discovery of facts negating the claims.  Finally,

Plaintiff and the putative class have already obtained a significant relief through this

litigation since SLT changed their rest break policy and shift length scheduling practice,

apparently safeguarding against rest break violations.  Id. at ¶¶ 9, 13, 18.  The Settlement

Fund of $600,000 therefore fairly, reasonably, and adequately compensates the class.  The

same is true even just considering the estimated Net Settlement Fund of $264,500, which is

the amount remaining after deduction of the payment to the LWDA and amounts requested

for Class Counsel's attorneys' fees and costs, Plaintiff's incentive payment, and the

Settlement Administrator's fees.

### 3.    The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class, Nor Does it Provide Excessive Compensation to Counsel.

The method of allocating payments to the PCMs is fair and reasonable.  Each PCM

will be compensated on a *pro rata* basis, taking into account each employee's full-time

versus part-time status and number of weeks worked in the context of all putative class

members.  SA, ¶ II.F.  Weeks worked during the period in which SLT's challenged rest

break policy was in effect will be compensated at a significantly higher rate than weeks

worked after the policy and clarification of SLT's policy.  Id.  This is fair and reasonable

since the evidence indicates that the vast majority of managers changed their shift length

and rest break scheduling practices immediately after the new policy went into effect.

Hoyer Decl., ¶¶ 9, 13, 18.  Full-time and part-time PCMs are compensated from separate

1   funds based *pro rata* on each group's average pay rate and shifts in violation.  SA, ¶ II.F.

2   Terminated employees are entitled to a greater share since they are eligible for waiting time

3   penalties.  Id.  The Waiting Time Penalty Fund is allocated only in proportion to the chances

4   of success on that claim.  Id.  Full-time and part-time PCMs share equally in the Inaccurate

5   Wage Statement Penalty Fund since those penalties are not based on pay rate but rather

6   the number of wage statement violations.  Id. at ¶ II.F.3.  Furthermore, the settlement is

7   equally attractive to current and former employees because they are not required to submit

8   a claim for payment.  Id. at ¶¶ II.A.22, II.G.1, II.M.1.  The attorneys' fees of $250,000

9   allocated under the Settlement Agreement are fair and reasonable since that amount

10  represents Class Counsel's "lodestar," or, in other words, the hours actually expended on

11  the case times Counsel's reasonable rate.  Hoyer Decl., ¶ 30.  This figure does not even

12  include work that Counsel will perform in order to effectuate the settlement agreement

13  should the Court grant preliminary approval.  Id.

14       "The Supreme Court has repeatedly emphasized that the lodestar fee should be

15  presumed reasonable unless some exceptional circumstances justifies deviation."

16  *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing *Pennsylvania v. Delaware*

17  *Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)).  "In computing the fee,

18  counsel for prevailing parties should be paid, as is traditional with attorneys compensated

19  by a fee-paying client, for all time reasonably expended on a matter."  *Pennsylvania*, id.

20  (internal quotations omitted).  In some circumstances, an upward adjustment, or an

21  "enhancement" of fees is warranted.  *Quesada*, 850 F.2d at 540 (citing *Blum v. Stenson*,

22  465 U.S. 886, 899 (1984); *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986)).

23  Factors relevant to this inquiry include, (1) whether Counsel's services were provided on a

24  contingent fee basis, (2) whether there was a delay in payment of attorneys' fees, and (3)

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                              25

the nature of the results obtained.  *Quesada*, 850 F.2d at 539–541 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006–1011 (9th Cir. 2002).  "'It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.' [Citations.]  This provides the 'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies.  [Citation.]"  *Fischel*, 307 F.3d at 1008 (citing *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); see also *Ketchum v. Moses*, 24 Cal.4th 1122 (2001).

Here, Class Counsel pursued the instant case on a purely contingent fee basis.  Hoyer Decl., ¶ 31.  Plaintiff paid no retainer fee, and Counsel paid for all litigation costs of approximately $33,000, out of pocket and with no guarantee of any reimbursement.  Id.  Counsel has invested a significant amount of attorney hours into this case over the past year without payment and without any guarantee of payment.  Id.  Counsel obtained excellent results for the class.  Id. at ¶¶ 23 and 28.  The proposed *Net* Settlement Fund of $264,500, is eighty-five percent of the likely recovery calculated by Plaintiff.  This extraordinarily good result was obtained after a relatively short period of time in litigation, saving Plaintiff and the putative class potentially years of further litigation with the risk of recovering less or nothing at all.

Notwithstanding these factors supporting an enhancement award, Class Counsel does not request an enhancement because the $250,000 that represents Counsel's lodestar is already a significant portion (42 percent) of the entire settlement amount.  Id. at ¶ 31.  Of course, the specific amount of Counsel's fees will be subject to approval by the

1   Court upon a motion for fees justifying the requested amount.  Plaintiff will bring an

2   application for fees to be heard at or before the final approval hearing, should the Court

3   grant preliminary approval.

4           **4.**        **The Court Should Appoint Rust Consulting as the Settlement Administrator and Approve the Costs of Settlement**

5                   **Administration.**

6   The parties have selected Rust Consulting, Inc. (www.rustconsulting.com) as the

7   Settlement Administrator who will be responsible for mailing and re-mailing class notices,

8   processing opt-out requests, calculating individual settlement awards, preparing reports for

9   the Court and the parties, and verifying payments.  Rust Consulting is widely esteemed and

10  experienced in the field of class action administration and is well qualified to serve as the

11  Settlement Administrator in this case.  The Court should approve Rust Consulting as the

12  Settlement Administrator and preliminarily approve the payment of up to $30,000 for

13  administrative costs.

14      **G.**    **The Proposed Method of Notice Satisfies Rule 23(e)(1) and 23(c)(2)(B).**

15  Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a

16  reasonable manner to all class members who would be bound by the proposal."  Notice

17  must "apprise interested parties of the pendency of the action and afford them an

18  opportunity to present their objections," *Mullane v. Central Hanover Bank & Trust Co.*, 339

19  U.S. 306, 315 (1950), and it must satisfy the requirements of Rule 23(c)(2)(B), which

20  requires the notice to state:

21          (i) the nature of the action; (ii) the definition of the class certified; (iii) the
    class claims, issues or defenses; (iv) that a class member may enter an
22          appearance through an attorney if the member so desires; (v) that the
    court will exclude from the class any member who requests exclusion; (vi)
23          the time and manner for requesting exclusion; and (vii) the binding effect
    of a class judgment on members under Rule 23(c)(3).

24

1    See, e.g., *In re M.L. Stern Overtime Litigation*, *supra*, 2009 WL 995864.

2    The proposed Class Notice in this case is based on the format recommended by the

3    Federal Judicial Center's templates for class action notices in employment cases, available

4    at www.fjc.gov.  SA, Exhibit A.  The Notice summarizes the proceedings in the instant

5    litigation, the scope of the class, the terms of the settlement, including the nature of the

6    release and the estimated amount of each individual's award, instructions on how to opt-

7    out, challenge the basis for the award, or object, notice of the final approval hearing, and

8    other pertinent information.  Id.  The Notice will be mailed to each PCM's last known

9    address or to any new address that can be determined through searching the National

10   Change of Address database.  SA, ¶ II.K.  For the convenience of the PCMs, the Notice

11   and other pertinent settlement-related documents will also be posted on Class Counsel's

12   website at www.hoyerlaw.com.  Hoyer Decl., ¶ 32.  The proposed method of notice is

13   therefore reasonable and satisfies Rule 23(c)(2)(B).

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**                    28

1

## VI.    CONCLUSION

2          On the basis of the foregoing, Plaintiff respectfully requests the Court to issue an

3   order conditionally certifying the proposed settlement class, preliminarily approving the

4   proposed Settlement Agreement as fair, reasonable, and adequate and within the range of

5   possible final approval, approving as to form and ordering the Notice to be mailed to the

6   proposed settlement class, and setting a final approval hearing per the proposed scheduled

7   filed herewith as Exhibit 1.

8

9   Date:  July 5, 2013                                    HOYER & ASSOCIATES

10

11                                                          Richard A. Hoyer
                                                            David C. Lipps
12                                                          Attorneys for Plaintiff
                                                            AARON PALM
13

14

15

16

17

18

19

20

21

22

23

24

## EXHIBIT 1 — PROPOSED SCHEDULE

| Date | Activity |
|---|---|
| TBD | Date of preliminary approval order |
| 30 days after preliminary approval | Administrator to mail notice |
| 10 days after notice mailed | Administrator to provide notice to counsel for the parties that notice has been mailed |
| 45 days after notice | PCMs to mail opt-out form or objection notice |
| 21 days before final approval hearing | Administrator to provide (1) number of notices mailed and (2) list of all PCMs who submitted timely opt-out forms |
| 14 days before final approval hearing | Plaintiff to file final approval motion |
| 14 days before final approval hearing | Plaintiff to file application for attorneys' fees and costs |
| TBD* | Final approval hearing<br><br>*Per the Class Action Fairness Act, this must be scheduled after October 13, 2013, 100 days after the filing of the Motion for Preliminary Approval. |
| TBD | Final order and judgment |
| TBD | Effective date |
| 15 days after effective date | SLT to deliver the settlement funds to the Administrator |
| 30 days after effective date | Administrator to distribute payments to the SCMs and any approved amounts to Class Counsel and Plaintiff |
| 135 days after effective date | Administrator to distribute any un-deposited or otherwise remaining funds to the *cy pres* beneficiary and provide certification of completion of settlement administration to counsel for the parties |